## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ANDRE JOHNSON (#375946)　　　　　　　　　　CIVIL ACTION NO.

VERSUS　　　　　　　　　　　　　　　　　　　19-788-JWD-EWD

NICHOLAS SANDERS

### NOTICE

　　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

　　　In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　　Signed in Baton Rouge, Louisiana, on July 2, 2021.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Erin Wilder-Doomes
　　　　　　　　　　　　　　　　　　　　　　　**ERIN WILDER-DOOMES**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANDRE JOHNSON (#375946)                                              CIVIL ACTION NO.

VERSUS                                                                           19-788-JWD-EWD

NICHOLAS SANDERS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint, as amended, of Andre Johnson ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana.[1] Based on the screening process for such complaints, it is recommended that the following claims be dismissed with prejudice as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A: retaliation, conspiracy, due process violations, verbal remarks and harassment, excessive force for the incident occurring on March 22, 2019, claims purportedly brought on behalf of others related to "underground hate crimes," and claims against Nicholas Sanders ("Sanders") in his official capacity for monetary damages. It is further recommended that this matter be referred to the undersigned for further proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims against Sanders for monetary relief in Sanders' individual capacity for the acts of excessive force allegedly occurring on November 19, 2018.[2]

---

[1] R. Docs. 1, 8, & 12.
[2] Further, Plaintiff should not be given further leave to amend in this case. Plaintiff has already amended his Complaint twice (R. Docs. 8 & 12) and, as noted below, he has several other suits pending in this Court against other prison officials which raise additional claims. Courts are not required to provide plaintiffs with unending leave to attempt to state a claim. *See, e.g.*, *McDowell v. Our Lady of the Lake*, No. 19-569, 2019 WL 4916165, at n. 32 (M.D. La. Sept. 19, 2019); *Jackson v. United States Postal Service*, No. 19-568, 2019 WL 5587227, at n. 34 (M.D. La. Sept. 19, 2019); *Joseph v. People Ready*, No. 17-124, 2018 WL 5818346, at *2 (M.D. La. Nov. 7, 2018).

## II. Background

Plaintiff sued in November 2019 under 42 U.S.C. § 1983 alleging that Sanders violated Plaintiff's First, Eighth, and Fourteenth Amendment rights.[3] Plaintiff seeks declaratory and monetary relief.[4]

## III. Law & Analysis

### A. Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[5] The statutes impose similar standards for dismissal and are intended to afford the court the ability to separate those claims that may have

---

[3] *See* R. Doc. 1, pp. 3-4.  To the extent Plaintiff describes acts or omissions of individuals other than Sanders, these other potential claims are not considered in this Report.  First, Plaintiff has filed several lawsuits in this Court against other individuals, some of which are based on similar facts to those described in this suit. *See, e.g.*, *Andre Johnson v. Derrick Davis*, Civil Action No. 19-734 (M.D. La.); *Andre Johnson v. Tyrone Kelly, et al.*, No. 20-186 (M.D. La.); *Andre Johnson v. Rober Lewis, et al.*, No. 20-105 (M.D. La.); and *Andre Johnson v. Marcus Jones*, No. 19-896 (M.D. La.).  Because Plaintiff only named Sanders as a defendant in this action and because he has largely pursued action against other individuals in other cases, the facts provided against other individuals here are construed as background, unless the facts are specifically discussed in this Report in connection with a claim against Sanders.  With respect to Plaintiff's second amended complaint, in which he makes allegations regarding "cyber attacks" and "malfeasance" against various defendants, including Luke Rheams, that are unrelated to the facts alleged in Plaintiff's original and first amended complaints, this Report does not consider those facts.  *See* R. Doc. 12.  Plaintiff has filed a separate lawsuit with this Court against Rheams including these facts.  *See Andre Johnson v. Luke Rheams*, *et al.*, Civil Action No. 20-814 (M.D. La).  Similarly, with respect to the new, unrelated facts alleged against Major Washington and Captain Kelly and others included in an ARP attached to Plaintiff's second amended complaint (R. Doc. 12-1, p. 7), Plaintiff has filed separate lawsuits related to these events against these individuals, who have not been named as defendants in this case.  *See, e.g., Andre Johnson v. Tyrone Kelly, et al*, Civil Action No. 20-186 (M.D. La.).  Further, any additional allegations against Sanders in the second amended complaint are conclusory and insufficient to survive screening.  Those that are not conclusory merely reiterate complaints already made and discussed in this Report, including Plaintiff's loss of phone privileges and alleged "verbal assaults" by Sanders.  R. Doc. 12, p. 6.
[4] R. Doc. 1, p. 28.  Although Plaintiff also references injunctive relief, it is not clear what injunctive relief he is seeking from Sanders.  *See* R. Doc. 1, p. 1 and R. Doc. 8, p. 1.
[5] §1915(e) provides a procedural mechanism for dismissal of lawsuits that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"); §1915A provides a procedural mechanism for dismissal of lawsuits by prisoners against a governmental entity or employee of a governmental entity that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff.  Plaintiff was granted permission to proceed *in forma pauperis* on December 10, 2019, so both statutes apply.  R. Doc. 3.

merit from those that lack a basis in law or in fact. Dismissal may be made before service of process or before any defendant has answered if the court determines that the claim or action does not pass the screening process.

To determine whether a complaint fails to state a claim under §§ 1915(e) and 1915A, courts apply the same standard used for dismissal under Fed. R. Civ. Proc. 12(b)(6).[6] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] For a complaint to survive dismissal, it "must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim."[10]

## B.  Plaintiff has Not Stated a Claim for Retaliation

Reading Plaintiff's Complaint broadly, it appears he is alleging the following four distinct acts of retaliation: 1) Sanders used excessive force against Plaintiff on November 19, 2018 due to Plaintiff's comments made in defense of EMT Bordelon; 2) Sanders and other officers issued false disciplinary reports against Plaintiff because Plaintiff had filed grievances against Sanders; 3) Sanders again used excessive force against Plaintiff on March 22, 2019, after Plaintiff had filed

---

[6] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).
[7] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[9] *Id.*
[10] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009)

3

multiple grievances against Sanders; and 4) on August 31, 2019, Sanders had another inmate stab Plaintiff, presumably, again, because Plaintiff had filed grievances against Sanders.

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.[11] Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[12] To pass the *de minimis* standard for a retaliatory act, a plaintiff must allege an adverse act that "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."[13] Each alleged act of retaliation is addressed, below.

### i. Plaintiff Cannot State a Claim for Retaliation Arising from the Alleged Excessive Force Occurring on November 19, 2018

As to the first alleged act of retaliation, Plaintiff says that "Nicholas Sanders 'retaliated' against Andre Johnson by ('using excessive force for his protected speech activities')" on November 19, 2018.[14] The "protected" speech Plaintiff refers to involves an incident where Plaintiff confronted Sanders and complained that "nothing was done" to address the inmate who spit on, and used racial slurs against, EMT Michael Bordelon.[15] Plaintiff alleges that Sanders

---

[11] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).
[12] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).
[13] *Morris*, 449 F.3d at 686.
[14] R. Doc. 1, pp. 4-5.
[15] R. Doc. 1, pp. 3-6.  Plaintiff states that he used his "protected speech" speaking on behalf of "EMT Lieutenant Michael Bordelon, EMT Mrs. Shunun, EMT Mrs. Amanda, EMT Mrs. Boker, and EMT Mrs. Tucker." R. Doc. 1, p. 6.

4

retaliated against him by using excessive force on two instances that day; one instance, apparently, immediately after Plaintiff spoke out.[16]

This retaliation claim lacks merit because Plaintiff's verbal confrontation with a prison official is not constitutionally protected activity. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[17] Thus, a prisoner's First Amendment claim, "must be analyzed in terms of the legitimate policies and goals of the corrections system...."[18] According to Plaintiff's allegations, he confronted an officer regarding inaction with respect to a situation between another inmate and a member of prison staff. Several courts have found that verbal face-to-face confrontations by inmates with prison officials are not protected speech because "face-to-face verbal confrontation with an officer presents a danger of a disturbance and a disruption to institutional order and discipline."[19] Accordingly, these interactions are not protected speech that may support a First Amendment claim of retaliation.[20] Because Plaintiff was

---

[16] R. Doc. 1, pp. 5-7.
[17] *Pell v. Procunier*, 417 U.S. 817, 822 (1974).
[18] *Id.*
[19] *Nunez v. Ramirez*, No. 09-413, 2010 WL 1222058, at *5–6 (S.D. Cal. Mar. 24, 2010) (an inmate's direct, face-to-face verbal confrontation with an officer presents a danger of a disturbance and a disruption to institutional order and discipline; therefore, it is not protected speech and cannot support a First Amendment retaliation claim).
[20] *See Morgan v. Moore*, No. 05-113, 2005 WL 1334621, at *2 (E.D. Tex. June 6, 2005), citing *Freeman v. Texas Dept of Criminal Justice*, 369 F.3d 854 (5th Cir. 2004) (an inmate's statements made to an officer during an argument were not protected speech); *Sanchez v. Allen*, No. 13-25, 2013 WL 5829156, at *5 (E.D. Tex. Oct. 29, 2013), *aff'd*, 611 Fed.Appx. 792 (5th Cir. 2015) (openly criticizing an officer is not constitutionally protected speech that may support a retaliation claim). *See also Carl v. Griffin*, No. 08-4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("The plaintiff's brief and isolated verbal [encounter with the defendant] does not constitute protected First Amendment speech [because] [t]o construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.") (internal quotation marks and citation omitted); *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (a prisoner's face-to-face verbal confrontation about the conditions of his confinement was not protected speech); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that prisoner's characterization of hearing officer as a "foul and corrupted bitch" violated prison regulation prohibiting insolent behavior and was not protected by the First Amendment); *see also, e.g., Brown v. Hannah*, 850 F. Supp. 2d 471 (M.D. Penn. 2012) (inmate did not have a constitutionally protected right in the prison setting to use inappropriate, disrespectful and derogatory language to a prison official, and therefore, filing misconduct report against inmate was not retaliation in violation of his First Amendment speech rights); *Turner v. Felzien*, No. 11-03033, 2013 WL 1093001, at *2 (D. Colo. Mar. 15, 2013) (holding that "insubordinate and derogatory comments made to various prison officials" was not protected by the First Amendment); *Thomas v. MCSO*, No. 09-0708, 2009 WL

5

not engaging, or attempting to engage, in a constitutionally protected activity, he cannot state a claim for retaliation as to this instance.

### ii. Plaintiff Cannot State a Claim for Retaliation Arising from Issuance of Any Disciplinary Reports

Plaintiff's claim that false disciplinary reports were written against him in retaliation for his complaints against Sanders also fail.[21] In his Complaint, Plaintiff sets forth the following chronology of events regarding issuance of disciplinary reports:

- In October through November 2018, multiple, allegedly false, disciplinary reports were filed against Plaintiff by Sanders and other officers.[22]

- On November 19, 2018, the alleged incident of excessive force that involved Sanders and is discussed herein occurred.[23] It appears the first disciplinary report authored by Sanders was also written on this date.[24]

- In 2019, Plaintiff filed multiple grievances against Sanders.

- On March 20, 2019, Plaintiff alleges Sanders threatened him.[25]

---

1311992, at *3 (D. Ariz. May 12, 2009) (holding that calling an officer a derogatory name is not constitutionally protected conduct).

[21] It appears Plaintiff is also alleging that he is being held in administrative segregation in retaliation, which apparently arises from the issuance of the allegedly false disciplinary reports. *See* R. Doc. 8, pp. 12-13. These facts would also not support a retaliation claim because Plaintiff does not provide any indication that Sanders ordered his placement in administrative segregation or has any authority to release him from administrative segregation. Personal liability is an absolute prerequisite to § 1983 liability. *Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because the Complaint does not allege any facts that Sanders participated in sentencing Plaintiff to administrative segregation or plays any part in keeping Plaintiff confined in administrative segregation, Plaintiff cannot state a claim regarding his continued confinement in administrative segregation against Sanders. Further, Plaintiff does not even allege that he was sent to administrative segregation because of the disciplinary report written *by* Sanders. R. Doc. 1, pp. 14-15. Thus, Plaintiff has not alleged facts to demonstrate causation between the disciplinary report issued by Sanders and the adverse action, *i.e.*, being sentenced to administrative segregation. Rather, it appears that as early as the November 2018 incident, Plaintiff was already confined in administrative segregation. R. Doc 1, p. 11 (referencing that "CBD Administrative Lockdown tire [sic] video recording footage will reveal" evidence of the alleged retaliation and excessive force by Sanders). This suggests that Plaintiff was already housed in administrative segregation prior to the issuance of the disciplinary report by Sanders, so Plaintiff cannot state a retaliation claim against him based on these facts.

[22] R. Doc. 1, pp. 10-11. Other disciplinary reports were allegedly written thereafter (R. Doc. 1, p. 10), but because the alleged retaliatory actions occurred on November 19, 2018, the Report focuses on those occurring prior to the alleged retaliatory act for purposes of this claim. *See* R. Doc. 8, p. 5.

[23] R. Doc. 1, p. 4.
[24] R. Doc. 1, p. 11.
[25] R. Doc. 1, p. 13.

6

- On March 22, 2019, Plaintiff alleges Sanders used excessive force against him "when there was no need."[26]

- In March 2019, Plaintiff also alleges that multiple disciplinary reports were filed against him by an individual on behalf of Sanders in retaliation for filing ARPs against Sanders.[27]

- On August 31, 2019, Sanders allegedly "had another inmate stab Andre Johnson multiple times"[28] and another officer left him to suffer by refusing to get him medical assistance after the alleged stabbing.[29] Plaintiff also alleges that on this date he received "three different false write ups."[30]

While a chronology of events can demonstrate motive, this one does not.[31] Plaintiff alleges that prior to November 19, 2018, Sanders "and other corrupted officers" wrote "13 false Disciplinary reports" against Plaintiff.[32] Though Plaintiff goes on to detail the facts behind several of the alleged false disciplinary reports, all but one of these incidents occurred in 2018.[33] Plaintiff alleges the motivation for retaliation was Plaintiff's filing of "numerous ARP(s)." However, the ARPs Plaintiff cites as the motive for the retaliation were not filed until 2019—after the alleged adverse action.[34] This information does not establish a chronology of events from which motive could be inferred.

Further, all but one disciplinary report was written by officers other than Sanders. Plaintiff states that disciplinary reports were written by other officers to retaliate against him on behalf of

---

[26] R. Doc. 1, p. 13.
[27] R. Doc. 1, p. 15.
[28] R. Doc. 1, p. 15. Plaintiff alleges Joseph Lamartiniere was also implicated in this, but because Lamartiniere is not a Defendant herein, Plaintiff's potential claims against Lamartiniere are not further discussed.
[29] R. Doc. 1, pp. 15-16. This allegation is made against a Captain Russ, whom was the subject of another action filed by Plaintiff that was dismissed as legally frivolous, and his claims against Russ are not considered herein. *See Andre Johnson v. Edward Russ*, No. 19-856 (M.D. La.).
[30] R. Doc. 1, p. 16.
[31] *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (because direct evidence of retaliatory motive is often not available, Plaintiffs can allege a "chronology of events" from which retaliation may be plausibly inferred).
[32] R. Doc. 1, p. 10.
[33] R. Doc. 1, pp. 10-14.
[34] R. Doc. 1, p. 14 ("Sanders violated the First Amendment by retaliating against Andre Johnson for filing numerous ARP(s) LSP-2019-134, LSP 2019-0653.")

7

Sanders,[35] but provides no facts in support of this conclusory assertion. Plaintiff has not made any allegations regarding the nature of the relationship between Sanders and these other officers that would suggest any plausible retaliatory motive. Further, even an allegation that these officers were coworkers, or friends, of Sanders' is not sufficient to support a claim that they conspired to retaliate against Plaintiff on Sanders' behalf.[36] Thus, this claim must fail.

### iii. Plaintiff Cannot State a Claim for Retaliation Arising Being Stabbed by Another Inmate

Plaintiff alleges Sanders "had another inmate" stab Plaintiff, and "nothing still have [sic] been done about this retaliation."[37] For Plaintiff to prove these facts, he would have to prove a conspiracy existed between Sanders and this other inmate. A plaintiff who asserts conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.[38] "Bald allegations that a conspiracy existed are insufficient."[39] Plaintiff has not alleged facts to support a conspiracy as to this claim, including that Sanders had an agreement with this inmate. These wholly conclusory allegations of retaliation fail.[40]

---

[35] *See, e.g.*, R. Doc. 1, p. 11 ("Lt. Stroudater…retaliated for…Sanders."); p. 12 ("Captain Marcus Jones retaliated for Lt. Col. Sanders"); p. 15 ("Herman Holmes…filed false charges…in retaliation for filing numerous ARP(s) against Nicholas Sanders.").

[36] *See Kadri v. Haro*, No. 05-167, 2006 WL 3359426, *7 (N.D. Tex. Nov. 20, 2006) (finding the plaintiff's allegation of a close friendship was conclusory and insufficient to support a conspiracy allegation.); *Marbles v. Haynes*, No. 14-80, 2017 WL 3124180, *4 (E.D. Tex. June 22, 2017) (finding that conclusory allegations that defendants conspired to retaliate were insufficient to sustain a § 1983 action).

[37] R. Doc. 1, p. 15.

[38] *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

[39] *Id.*

[40] To the extent Plaintiff is attempting to allege a claim of failure to protect against Sanders for the stabbing, such a claim also fails, absent proving a conspiracy. Without adequate allegations of a conspiracy between Sanders and the inmate, there is no allegation that Sanders knew or had reason to know this inmate posed any risk to Plaintiff. To succeed on a failure to protect claim, Plaintiff must allege that the official was aware of facts from which he could draw the inference that a substantial risk of harm exists, and he must actually draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). Plaintiff has not alleged that Sanders was aware of facts to indicate that the inmate who allegedly stabbed him posed a specific risk to Plaintiff; for example, Plaintiff does not allege that the inmate was on his enemy list or that Plaintiff had been involved in any prior altercation with the inmate. Thus, absent sufficient allegations of conspiracy, the Court could not find from the facts alleged that Sanders "consciously disregard[ed] a substantial risk of serious harm." *Id.*, at 826.

### iv. Plaintiff has Not Stated a Claim for Retaliation for the Alleged Act of Excessive Force Occurring on March 22, 2019

Plaintiff states in a conclusory fashion that Sanders used excessive force against him on March 22, 2019,[41] but fails to describe the situation or to provide any details regarding the type or severity of force used. Because Plaintiff has only provided a conclusory allegation of retaliation through excessive force on March 22, 2019, this claim also fails.[42]

### C. Plaintiff Fails to State a Claim for "Underground Hate Crimes"

Plaintiff mentions several times "underground hate crimes" perpetuated by Sanders against Michael Bordelon and other white EMTs. To the extent Plaintiff intends to bring a claim on behalf of these individuals, this claim should be dismissed as Plaintiff lacks the standing to do so.[43]

### D. Plaintiff States a Claim for Excessive Force for the Incidents Occurring on November 19, 2018; not for the March 22, 2019 Incident

### i. November 19, 2018 Incidents

Plaintiff alleges that in connection with the incident in which Plaintiff verbally defended EMT Bordelon, Sanders came to the bars of Plaintiff's cell and began using excessive force by "displaying his fists in the air waving his fists toward Andre Johnson then 'punch through CBD cell two bars stricken [sic] Andre Johnson in the chest.'"[44] Plaintiff also states that Sanders directed obscene remarks towards him.[45] According to Plaintiff, Warden Thompson came to his

---

[41] R. Doc. 1, p. 13.
[42] *See Cardona v. Arias*, No. 11-13, 2014 WL 1281512, at * 1 (N.D. Tex. March 31, 2014) ("conclusory allegations and legal conclusions are insufficient to state a claim.").
[43] *See Perez v. Richland Parish Detention Center*, No. 19-1124, 2019 WL 6038031, at *4-5 (W.D. La. Oct. 24, 2019), *report and recommendation adopted, Perez v. Richland Parish Detention Center*, No. 19-1124, 2019 WL 6003241 (W.D. La. Nov. 13, 2019) (holding that an inmate plaintiff lacked the standing to pursue relief on behalf of other inmates and on behalf of the detention center staff because the plaintiff had to be able to demonstrate a deprivation of his personal rights, as opposed to the rights of others).
[44] R. Doc. 1, p. 6.
[45] R. Doc. 1, p. 6.

cell and instructed security to let Plaintiff out because Thompson "knew Andre Johnson was not about any trouble."[46]

Plaintiff was returned to his cell, and "about a hour or two later," a second alteration occurred with Sanders during which Plaintiff alleges he was sprayed with the "maximum amount of chemical agent."[47] Based on Plaintiff's allegations, during the second altercation, Sanders called a cell extraction team, sprayed Plaintiff a second time with chemical agent and, along with the cell extraction team, "yanked Andre Johnson off the top bed onto the concrete floor and savagely beat him."[48] Plaintiff alleges he never fought back, and based upon the allegations, Plaintiff had not done anything to warrant the use of any force.[49] Due to these alleged instances of excessive force, Plaintiff claims to have suffered "serious head injuries," pain in his eyes, blindness in his left eye for three months, blurry vision, whole body pain, and blood in his urine.[50]

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[51] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[52] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de*

---

[46] R. Doc. 1, p. 6.
[47] R. Doc. 1, p. 7.
[48] R. Doc. 1, p. 8.
[49] R. Doc. 1, p. 8.
[50] R. Doc. 1, p. 9. The Health Care Request Forms attached to the Complaint and Amended Complaint (*see* R. Docs. 1-1 and 8-2) appear to be relied on by Plaintiff to establish the excessive force claim. *See* R. Doc. 1, p. 9 ("As a result of Lieutenant Colone [sic] Nicholas Sanders use of excessive force Andre Johnson suffered serious head injuries, eyes pain, blind in left eye for three months, right eye blurry, both eyes still blurry from the blow of the floor and punchs [sic] in the head, neck pain, chest pain, urinating blood, whole body pain all injuries cause [sic] by Nicholas Sanders."). To the extent these forms reference a claim of deliberate medical indifference, Plaintiff has not pleaded that claim in this case despite clearly using that language on the forms (*see, e.g*, R. Doc. 1-1, pp. 6, 13, 16, 18, 20, 21, 22, and 26), and despite multiple amendments to the Complaint.
[51] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).
[52] *Wilkins*, 559 U.S. at 38.

*minimis* uses of physical force, provided that such force is not "repugnant to the conscience of mankind."[53] Factors to be considered in determining whether an alleged use of force is excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[54]

Considering the facts in the light most favorable to Plaintiff, there was no need for the use of any force in either instance on November 19, 2018. The force utilized by Sanders allegedly caused Plaintiff more than *de minimis* injury, and no efforts were made to temper the severity of a forceful response. Plaintiff's claim for excessive force related to these alleged acts of excessive force should survive screening.

However, to the extent Plaintiff complains regarding remarks Sanders made,[55] he fails to state a claim. Verbal remarks, threats, and threatening gestures by prison guards do not amount to a constitutional violation.[56] Plaintiff complains of numerous instances where verbal remarks that were either derogatory or threatening were made towards him.[57] Any claim based upon these verbal remarks should be dismissed as legally frivolous.[58]

### ii. March 22, 2019 Incident

As stated above, Plaintiff alleges Sanders retaliated against him against on March 22, 2019 by using excessive force when there was no need, but he has only provided this conclusory statement of excessive force without any facts in support. Accordingly, just as Plaintiff's

---

[53] *Hudson*, 503 U.S. at 10.
[54] *Id.* at 7.
[55] *See* R. Doc. 1, pp. 3, 13.
[56] *Watson v. Winborn*, 67 F.Appx. 241 (5th Cir. 2003), *citing Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) and *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995).
[57] R. Doc. 1, pp. 3, 13.
[58] For example, Plaintiff complains that on March 20, 2019, Sanders harassed, intimidated, and threatened Plaintiff using "verbal assaults." R. Doc. 8, p. 3. Plaintiff cannot as a matter of law state a claim for any of the verbal threats and harassment he allegedly experienced.

11

retaliation claim regarding this incident must fail, so must his claim for excessive force because this conclusory assertion is insufficient to state a claim.

### E.  Plaintiff has Failed to State an Official Capacity Claim for Monetary Relief

To the extent Plaintiff seeks monetary damages against Sanders in his official capacity, such claims are barred.  42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[59] In addition, in *Hafer v. Melo*,[60] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit for monetary damages against a state official in an official capacity is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[61] Accordingly, Plaintiff's § 1983 claim for monetary damages asserted against Sanders in his official capacity is subject to dismissal.

### F.  Plaintiff Fails to State a Due Process Claim

Plaintiff alleges that he was not given at least 24 hours of notice prior to a disciplinary hearing as he believes was legal required. The procedures for prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.[62]   Plaintiff does not state what punishment resulted from the disciplinary charge complained of, but it appears he may have been sentenced to a quarters change.[63]  A mere quarters

---

[59] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[60] 502 U.S. 21 (1991).
[61] *Id*. at 25.
[62] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).
[63] R Doc. 1, p. 14.

12

change is insufficient to state a due process violation, and Plaintiff's Complaint lacks any facts to indicate that he has suffered from any atypical, significant deprivations as a result of any quarters change so as to entitle him to the protections afforded by the due process clause.[64]

To the extent Plaintiff complains of his continued confinement in administrative segregation, though this may eventually rise to the level of a constitutional violation,[65] Plaintiff does not provide any facts to indicate that Sanders is responsible for his continued stay in administrative segregation or that Sanders has the ability to order Plaintiff's release from administrative segregation. Because personal liability is a prerequisite to liability under § 1983[66] and because Plaintiff has provided no facts indicating Sanders is personally liable for his continued stay in administrative segregation, he cannot state a claim in this regard. Further, it does not appear that Plaintiff was sent to administrative segregation as a result of the November 19, 2018

---

[64] *Sandin*, 515 U.S. at 486. Plaintiff states later in his Complaint that he "went months without access to phone calls, months without access to the commissary, 360 days [as of the date of the complaint] without access to recreation, confinement in his cell for about 3 hours per week, denial of access to rehabilitative programs, significantly inadequate access to legal research materials and assistance." R. Doc. 1, pp. 17-18. These deprivations are allegedly a result of Plaintiff's confinement in administrative segregation because of "false" write-ups written with a retaliatory motive. In Plaintiff's amended complaint, he states he has been confined in these same conditions for 435 days. R. Doc. 8, pp. 12. Plaintiff does not, however, provide any facts to indicate that his continued confinement in administrative segregation violates his due process rights. For example, the deprivations complained of are not so atypical as to warrant due process protections, and even if these deprivations were significant and atypical, Plaintiff has not alleged that he is not receiving periodic review of his confinement. *See Moore v. Sawyer*, No. 10-310, 2010 WL 6004375, at *n. 4 (E.D. Tex. July 26, 2010) (loss of phone and commissary privileges does not implicate due process); *Lewis v. Dretke*, 54 Fed.Appx. 795, at *1 (5th Cir. 2002) (prisoner's claim challenging restriction of commissary privileges and loss of phone privileges resulting from allegedly false discipline charges did not implicate due process); *Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976) (no right to participate in rehabilitative programs); *Bowden v. Director, TDCJ-CID*, No. 13-904, 2014 WL 1116952 (E.D. Tex. March 18, 2014) (conditions including lack of access to outdoor recreation, the law library, and religious services are not atypical and significant hardships so as to implicate the due process clause). Plaintiff also states in a conclusory fashion that prison officials violated his due process rights by not reviewing "camera footages recording for exculpatory video evidence," related to the disciplinary charges arising from the November 19, 2018 incident. R. Doc. 1, pp. 24-25. Because inmates do not have a constitutional right to have their prison disciplinary proceedings properly investigated, handled, or favorably resolved, he cannot state a due process claim for "officials" failure to review the video footage for exculpatory evidence. *Mahogany v. Miller,* 252 Fed.Appx. 593, 595 (5th Cir. 2007).

[65] The Fifth Circuit has suggested that "two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Bailey v. Fisher*, 647 Fed.Appx 472, 476 (5th Cir. 2016), (citing *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) (internal citations omitted)).

[66] *Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

13

disciplinary report issued by Sanders, as it appears Plaintiff was already confined in administrative segregation on November 19, 2018.[67] As noted above, it appears that Plaintiff was already housed in administrative segregation prior to this date.

To the extent Plaintiff alleges Sanders caused his clemency proceedings to be canceled,[68] he cannot state a claim in this regard either. This claim may be summarily rejected because the Supreme Court has clearly held that "noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law."[69] Accordingly, Plaintiff's due process claims are properly dismissed as legally frivolous.

### G. Exercise of Supplemental Jurisdiction Should be Declined

Insofar as Plaintiff seeks to have this Court exercise supplemental jurisdiction over potential state law claims, this Court should decline to do so. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[70] Because the sole remaining claims of excessive force require wholly distinct analyses from any state law claim that may be based on these facts, such as the tort of battery, it is appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims, if this Report is adopted.

---

[67] R. Doc. 1, pp. 23-24.
[68] R. Doc. 8, p. 4. It is unclear if this is meant to be a due process claim. Plaintiff states Sanders canceled his clemency proceedings in retaliation but provides no chronology of events or motive related thereto and therefore, has not stated a claim for retaliation. It appears, however, that Plaintiff's clemency proceedings were canceled because of disciplinary charges, and the claim is thus, discussed in connection with Plaintiff's due process claim.
[69] *See District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67–68 (2009) (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)).
[70] 28 U.S.C. § 1367.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the following claims by Andre Johnson be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A: retaliation, conspiracy, due process violations, verbal remarks and harassment, excessive force for the incident occurring on March 22, 2019, claims purportedly brought on behalf of others related to "underground hate crimes," and claims against Nicholas Sanders in his official capacity for monetary damages.

**IT IS FURTHER RECOMMENDED** that supplemental jurisdiction be **DECLINED** and, if amendment is sought, leave be **DENIED.**

**IT IS FURTHER RECOMMENDED** that this matter be referred to the undersigned for further proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims against Sanders for monetary relief in Sanders' individual capacity for the acts of excessive force allegedly occurring on November 19, 2018.

Signed in Baton Rouge, Louisiana, on July 2, 2021.

                                                        _____
                                                        **ERIN WILDER-DOOMES**
                                                        **UNITED STATES MAGISTRATE JUDGE**